## In re GOLDSTEIN.
### No. 399.

Circuit Court of Appeals, Second Circuit.
July 14, 1930.

Lhowe & Obstfeld, of New York City (Emanuel A. Obstfeld, of New York City, of counsel), for appellant.

Arthur G. Solomon, of New York City (Louis R. Bick, of Brooklyn, N. Y., of counsel), for appellee bankrupt.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The bankrupt's petition to review the referee's turnover order of July 26, 1929, was filed with the referee on February 20, 1930. This appeal presents the question whether the petition for review was timely within Bankruptcy Rule 23 of the District Court, and this in turn depends upon whether service of a copy of the order, on July 30, 1929, upon Louis H. Solomon, was service upon the bankrupt's attorney within the meaning of said rule.[1]

---

[1] Rule 23 reads as follows:
"A petition for review of a Referee's order must be filed with the Referee within ten days after the order is made unless such time is ex-

It appears that, upon the filing of an involuntary petition in bankruptcy in November, 1928, an attorney named Louis Karasik filed a notice of appearance as the bankrupt's attorney. At several examinations of the bankrupt under section 21a (11 USCA § 44(a), Mr. Karasik appeared before the referee on the bankrupt's behalf. At a hearing held December 31, 1928, another attorney informed the referee that Mr. Karasik was forced to leave town on account of illness and that it was expected that a substitution of attorneys would take place. At a hearing before the referee on January 15, 1929, Mr. Steen, an attorney connected with the firm of Sherman, Solomon, Ribman & Goldring, was present with the bankrupt and directed that the appearance of this firm as attorneys for the bankrupt be noted on the record. This was done, and Mr. Steen acted on behalf of the bankrupt at said hearing. Similarly, on January 17 and 24, 1929, said firm, appearing by Mr. Steen, again had noted on the record its appearance as attorney for the bankrupt.

On January 30, 1929, the trustee in bankruptcy began the turnover proceeding which resulted in the referee's order of July 26, 1929. The trustee's petition and the order to show cause entered thereon were personally served upon the bankrupt. On the return date the bankrupt appeared personally and filed a verified answer, bound within a cover which bore the title of the cause and the words, "Louis H. Solomon, attorney for bankrupt." Louis H. Solomon was a partner in, or associated with, the aforesaid firm of Sherman, Solomon, Ribman & Goldring. On February 15, 1929, the bankrupt appeared at the adjourned date of the hearing upon the turnover petition, and the appearance noted was as follows: "Messrs. Sherman, Solomon, Ribman & Goldring, by Mr. Louis Solomon, represented by Mr. Dane, for the bankrupt." Mr. Dane requested an adjournment on the ground that Mr. Steen "who has been handling the case is sick in bed, and Mr. Solomon has been making arrangements to have Mr. Samuel C. Buberstein act in this matter

for him." An adjournment was granted, the referee saying: "The respondent will be prepared to proceed with an attorney, either the present attorney, or substituted attorney, and the adjournment is granted merely because the bankrupt is in the act of retaining a new attorney."

In the light of the foregoing circumstances, we think the referee's reference to "the present attorney" must necessarily be read as meaning Mr. Solomon, or his firm, not the bankrupt's original attorney, Mr. Karasik. Thereafter, throughout the turnover proceedings, Mr. Solomon, or the firm of Sherman, Solomon, Ribman & Goldring, appeared for the bankrupt at hearings, receipted for papers, and signed a stipulation as the bankrupt's attorneys, and conducted correspondence on his behalf with the attorneys for the trustee. On July 30, 1929, a certified copy of the turnover order was sent to the office of Sherman, Solomon, Ribman & Goldring, where the messenger was referred to Louis H. Solomon, who signed an admission of service as "attorney for bankrupt."

It is not denied that Mr. Solomon had authority to represent the bankrupt before the referee but it is contended that he was merely counsel employed by Mr. Karasik, and that the latter remained as the bankrupt's "attorney" throughout the proceedings. Such contention cannot prevail.

It may be, as the appellant argues, that turnover proceedings in a bankruptcy matter are so far independent of the original petition in bankruptcy that the bankrupt could retain a new attorney to represent him in the turnover proceedings without the necessity of an order of substitution. No precise authority has been found. Compare Doerle v. Doerle, 96 Misc. Rep. 72, 159 N. Y. S. 637; Slepin v. Beck, 84 Misc. Rep. 254, 145 N. Y. S. 530; McLaren v. Charrier, 5 Paige (N. Y.) 530, 532; Hinkley v. St. Anthony Falls Water Power Co., 9 Minn. 55 (Gil. 44); State v. Gulick, 17 N. J. Law, 435; Delaney v. Husband, 64 N. J. Law, 275, 45 A. 265; Withers v. Little, 56 Cal. 370. But we prefer to rest our decision upon another ground.

 The record discloses that Solomon, with the bankrupt's knowledge and consent, did in fact act as his attorney, that the attorneys for the trustee dealt with Solomon as such attorney, and that the referee recog-

tended by the Referee or the Court, and a copy of such petition shall be served on the adverse party.

"Where the order is the result of a decision upon a contested matter, the time within which to file the petition to review shall begin to run as to the party who procured the signing of such order, and as to the adverse party, from the date of the service of a copy of the Referee's order on the said adverse party or his attorney."

nized him as "the present attorney" and permitted the appearance of his firm to be entered on the referee's records as attorneys for the bankrupt. We regard this as equivalent to a substitution of attorneys on the record. Under such circumstances to require a formal order of substitution would exalt to a fetish a rule intended to insure orderly procedure, to inform the opposite party as to the attorney with whom he may safely deal, and to protect the lien of the attorney of record. See United States v. McMurtry, 24 F.(2d) 145 (D. C. S. D. N. Y.). The last consideration is immaterial here. We hold, therefore, that service of the turnover order upon Solomon was proper within Rule 23 of the District Court. While no precise authorities have been adduced, a situation closely analogous was presented in Golden Gate Hydraulic Co. v. Superior Court, 65 Cal. 187, 3 P. 628. There service of an order to show cause why the defendant should not be punished for contempt in disobeying an injunction was sustained, when made upon an attorney who had not been formally substituted for the attorney of record but had repeatedly appeared in the proceedings as one of the defendant's attorneys. See, also, Roussin v. Stewart, 33 Cal. 208; Gill v. Southern Pac. Co., 174 Cal. 84, 161 P. 1153; Margerem v. Makilwaine, 2 Bos. & Pul. (N. R.) 509; Farley v. Hebbs, 1 Har. & Woll. 203.

▮▮ Neither the Bankruptcy Act nor the General Orders in Bankruptcy prescribe the time within which a petition to review an order of a referee must be presented. It has been uniformly held that the petition must be filed within a reasonable time, if no local rule prescribes the time, or within the time prescribed by local rule, where such a rule exists. Crim v. Woodford, 136 F. 34 (C. C. A. 4); International Agr. Corp. v. Cary, 240 F. 101 (C. C. A. 6); In re Wink, 206 F. 348 (D. C. Md.); Remington, Bankruptcy (3d Ed.) § 3659. This court has held similarly as to petitions to revise filed too late under its rules. In re Fed. Snap Fastener Corp. (C. C. A.) 280 F. 720; In re Siegelbaum & Adelson (C. C. A.) 294 F. 683. The referee's order having been served on the bankrupt's attorney on July 30, 1926, and the petition to review having been filed nearly seven months later; the court is without jurisdiction to review it.

Accordingly, the order directing the referee to certify his proceedings for review is reversed.